

FILED
April 16, 2018
9:47 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Sherry Creasman | ) Docket No.  2017-05-0843 |
| | ) |
| v. | ) State File No. 3990-2017 |
| | ) |
| Waves, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Dale Tipps, Judge | ) |

---

### Affirmed and Remanded – Filed April 16, 2018

---

This interlocutory appeal involves an employee who claimed she suffered physical and psychological injuries resulting from an altercation with a patient while working as the manager of a group home for adults with developmental challenges.  As pertinent to this appeal, the employee alleged the altercation aggravated her pre-existing psychiatric condition.  The employer accepted the employee's physical injuries as compensable but denied that the need for psychiatric treatment arose primarily from the incident at work.  The trial court ruled the employee met her burden of establishing she would likely prevail at trial and ordered the employer to provide a panel of psychiatrists and ongoing treatment related to the work injury.  The employer has appealed.  We affirm the decision of the trial court and remand the case.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge Timothy W. Conner and Judge David F. Hensley joined.

Michael W. Jones, Nashville, Tennessee, for the employer-appellant, Waves, Inc.

R. Steven Waldron, Murfreesboro, Tennessee, for the employee-appellee, Sherry Creasman

### Factual and Procedural Background

Sherry Creasman ("Employee") was employed by Waves, Inc. ("Employer"), as the manager of a group home for adults with developmental disabilities.  Employee alleged that on January 15, 2017, she suffered physical and psychological injuries when she was assaulted by a resident of the home.  She claimed that the resident hit her head,

neck, and arms with a television remote. She reported the incident to her supervisor and was given a panel of healthcare providers from which she could select a treating physician.

On January 17, 2017, Employee received authorized treatment from Dr. Lynn Holliday and Dr. Samuel Perry at Vanderbilt University Medical Center. Dr. Holliday noted Employee had a history of "anxiety and current symptoms . . . are suggestive of underlying PTSD." Dr. Holliday recommended that Employee be placed in a work location separate from the person who assaulted her and that she receive counseling. Employee continued to follow up with Dr. Holliday, who later recommended an evaluation by a neuropsychologist. Dr. Perry likewise recommended Employee be seen by a neuropsychologist and made a referral to a neurologist.

On February 27, 2017, Employee was found unconscious at her home and was taken by ambulance to Williamson Medical Center where she received emergency medical care for an overdose of prescription medication. The hospital's records reflect Employee was "on multiple different other sedatives including 3 different benzodiazepines. This very well could be the etiology of the symptoms." Employee was discharged a few days later with a diagnosis of "[m]ulti-substance overdose, accidental." Employee testified she took the medications "exactly as prescribed."

Employer authorized treatment with Dr. Subir Prasad, a neurologist, who diagnosed Employee with post-traumatic headache and post-concussive syndrome. In an October 9, 2017 office note, he diagnosed her with "PTSD; agree significant issue . . . ask case [manager] again for psychiatric referral."

Thereafter, Employer sent Dr. Prasad a questionnaire in which he was asked to check a box in response to the following question: "Do you believe that the employment contributed more than 50% of her need for ongoing medical treatment?" Dr. Prasad checked "[n]o." When asked "[w]hat if any additional medical treatment would be required to return [Employee] back to her position," Dr. Prasad responded, "psychiatric treatment." In a January 10, 2018 office note, he stated, "I encouraged her to use her own insurance to seek psychiatric care and counseling ASAP."

Employee subsequently saw a neuropsychologist, James Walker, Ph.D. Dr. Walker's report reflects Employee's "distress is somewhat related to the assault that occurred on the job, but at a lower than 50% level." Employer also sent Dr. Walker a questionnaire in which he was asked to check a box in response to the same question: "[D]o you believe that the employment contributed more than 50% of her need for ongoing medical treatment?" Dr. Walker checked "[n]o," commenting that the need for treatment was "[r]elated to her employment, yes, but not the specific assault." Dr. Walker's assessment was that Employee's "complaints are excessive, and probably, as even she stated, reflect a hysterical process on her part."

2

Employee sought an independent psychiatric evaluation from Dr. Greg Kyser, a psychiatrist. On June 23, 2017, Dr. Kyser issued a lengthy report noting the various opinions with respect to the cause of Employee's condition. Dr. Kyser ultimately opined that, "[w]ere it not for this traumatic event, she would not be suffering her current psychiatric difficulties." Dr. Kyser also confirmed the causal link between Employee's hospitalization for the "accidental, non-intentional overdose of sedative medication prescribed for her work injury" and the work incident, describing the hospitalization as "directly related to her treatment for her work injury." Dr. Kyser assigned a 5% permanent psychiatric impairment rating.

Finding that Dr. Kyser's causation opinion overcame the presumption of correctness applicable to the authorized providers, the trial court concluded that Employee was likely to prevail at trial and ordered Employer to pay the medical expenses associated with her February 27, 2017 hospitalization. The court also ordered Employer to provide a panel of psychiatrists and authorize ongoing medical care for Employee's psychiatric injury to the extent it was causally related to her January 15, 2017 work injury. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2017). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2017).

## Analysis

### A.

A mental injury is defined as "a loss of mental faculties or a mental or behavioral disorder." Tenn. Code Ann. § 50-6-102(17) (2017). To qualify as compensable, a

3

mental injury must arise "primarily out of a compensable physical injury or an identifiable work-related event resulting in a sudden or unusual mental stimulus." *Id.* Cases focusing on the latter category make clear that (1) the injury must stem from an identifiable stressful, work-related event producing a sudden mental stimulus, and (2) the event must be unusual compared to the ordinary stress of the worker's job. *Ireton v. Horizon Mental Health Mgmt., LLC*, No. E2015-00296-SC-R3-WC, 2016 Tenn. LEXIS 3, at \*28 (Tenn. Workers' Comp. Panel Jan. 19, 2016).

However, not all mental injuries are compensable. For example, a "psychological or psychiatric response due to the loss of employment or employment opportunities" is not compensable. Tenn. Code Ann. § 50-6-102(17). Similarly, the aggravation of a pre-existing mental condition is not compensable "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A).

In this case, Employer argues that the trial court erred in finding Dr. Kyser's opinion rebutted the presumption of correctness attached to the opinions of the authorized providers, Drs. Prasad and Walker. According to Employer, Dr. Kyser's "one-time IME incorporating the testing and opinions of the authorized treating specialists and merely opining a contrary opinion" was insufficient to rebut the presumption.

It is well-established that a "trial judge has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Payne v. UPS*, No. M2013-02363-SC-R3-WC, 2014 Tenn. LEXIS 1112, at \*18 (Tenn. Workers' Comp. Panel Dec. 30, 2014). When there are conflicting medical opinions, as in this case, "the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). When one of those experts is an authorized treating physician, that expert's opinion has a presumption of correctness on the issue of causation. Tenn. Code Ann. § 50-6-102(14)(E).

Based on our review of the record, we cannot conclude the trial court erred in finding Dr. Kyser's opinion to be more persuasive than that of Dr. Prasad. First, Dr. Kyser is a psychiatrist while Dr. Prasad is a neurologist. Given that Employee's condition entails psychiatric issues, the trial court acted within its discretion in giving more weight to Dr. Kyser's opinion on psychiatric matters.

Second, Dr. Kyser considered Employee's psychiatric history in detail, yet still concluded that her symptoms were more than fifty percent caused by the assault at work. Specifically, Dr. Kyser stated, "[Employee] has a long-standing history of traumatic victimization and mental instability. . . . Considering all causes, it is clear that the assault

4

in question caused a deterioration and aggravation of her underlying depression, anxiety[,] and post[-]traumatic symptoms."

Third, the trial court correctly observed that Dr. Kyser, unlike Dr. Prasad, "comprehensively documented his evaluative process and the information he considered." Further, the court properly noted that each doctor had comparable information available to them, although neither physician addressed the other's causation opinion. We cannot conclude that either of these findings is error.

Fourth, the trial court properly considered, and found credible, the uncontroverted testimony of Employee and her sister, which supported Dr. Kyser's characterization of the change in Employee's post-accident condition as compared to her pre-existing psychiatric condition. It is undisputed that Employee suffered from anxiety and depression before the assault but "coped every day fine" prior to the work incident. The trial court determined Dr. Kyser's evaluation corroborated Employee's testimony that "at the time of her work injury, she was mentally stable and functioning well." An employee's lay testimony along with corroborative expert testimony may constitute adequate evidence of medical causation. *Lamb v. KARM Thrift Stores, LLC*, No. 2016-03-0758, 2017 TN Wrk. Comp. App. Bd. LEXIS 42, at *9 (Tenn. Workers' Comp. App. Bd. July 26, 2017).

Accordingly, we cannot conclude that the evidence preponderates against the trial court's findings that Dr. Kyser's opinion rebutted the presumption of correctness attached to Dr. Prasad's opinion and that Dr. Kyser's opinion should be given more weight.[1]

B.

Employer also asserts that it should not be held responsible for the medical expenses associated with Employee's hospitalization stemming from her overdose of prescribed medication. According to Employer, Employee was negligent in the use of her medications or overdosed intentionally. The trial court found Employer's position was "unsupported by any proof." We agree.

It is undisputed that Employee was prescribed several medications for her work injury and, as the trial court found, the medical records identified the problem causing the

---

[1] With respect to Dr. Walker's opinions, the trial court found "Dr. Walker is a psychologist, not a physician, and thus has no statutory authority to give a causation opinion." We agree. While psychologists may be treating providers in some circumstances, Tennessee Code Annotated section 50-6-204(h) (2017), only a physician may render a causation opinion, Tennessee Code Annotated section 50-6-102(14)(D). *See also Gates v. Jackson Appliance Co.*, No. W1999-00743-SC-WCM-CV, 2001 Tenn. LEXIS 522, at *16 (Tenn. Workers' Comp. Panel June 27, 2001) ("This panel is mindful of the decisions which require expert medical evidence and not that of a psychologist to establish causation and permanency of a mental injury.").

5

overdose as duplicative prescriptions from various providers. Moreover, Employee testified, without contradiction, that she took the medications as prescribed and that she did not attempt to harm herself. Also, Dr. Kyser provided his opinion as to her "nonintentional overdose of sedative medication which was prescribed for her work injury," stating that her "admission to the hospital [was] directly related to her treatment for her work injury." Given these circumstances, the trial court properly directed Employer to pay Employee's hospital bills. *See Rogers v. Shaw*, 813 S.W.2d 397, 400 (Tenn. 1991) ("[A]ll the medical consequences and sequelae that flow from the primary injury are compensable.").

C.

Employee requests that we direct the trial court to consider her request for attorney's fees and expenses when the case has concluded. It is unnecessary for us to do so, however, as the record reflects the trial court has already advised the parties that it intends to address the issue at the appropriate time which, in most cases, will be when the litigation has run its course. *See Thompson v. Comcast Corp.*, No. 2017-05-0639, 2018 TN Wrk. Comp. App. Bd. LEXIS 1 (Tenn. Workers' Comp. App. Bd. Jan. 30, 2018); *Andrews v. Yates Servs., LLC*, No. 2016-05-0854, 2017 TN Wrk. Comp. App. Bd. LEXIS 35, at *7 (Tenn. Workers' Comp. App. Bd. May 23, 2017). In any event, we conclude it is premature for us to address the issue of attorney's fees and expenses.

**Conclusion**

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision. Accordingly, the trial court's decision is affirmed in all respects, and the case is remanded.